Harold A. Barza (SBN 80888)
halbarza@quinnemanuel.com
Robert S. Hill (SBN 276056)
roberthill@quinnemanuel.com
QUINN EMANUEL URQUHART
     & SULLIVAN LLP
865 S. Figueroa Street 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Wayne Taichi Alexander (*pro hac vice*)
waynealexander@quinnemanuel.com
QUINN EMANUEL URQUHART
     & SULLIVAN LLP
NBF Hibiya Bldg., 25F
1-1-7 Uchisaiwai-cho
Chiyoda-ku, Tokyo 100-0011
Japan
Telephone: +81 3 5510 1711
Facsimile: +81 3 5510 1712

***Attorneys for Case No. 13-CV-5980 Defendants
Pioneer Corporation and
Pioneer Electronics (USA) Inc.***

[*additional defense counsel listed on next page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BLACK HILLS MEDIA, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>(1) PIONEER CORPORATION and PIONEER ELECTRONICS (USA) INC., (2) YAMAHA CORPORATION OF AMERICA, and (3) SONOS INC.,<br><br>        Defendants in coordinated cases. | Master Case No. 13-CV-5980-SJO (PJWx)<br><br>Coordinated with Case Nos.:   13-CV-6054<br>                                             13-CV-6062<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF STANDING**<br><br>**[Fed. R. Civ. P. 12(b)(1)]**<br><br>Date:  Monday, January 13, 2014<br>Time:  10:00 a.m.<br>Place:  Courtroom of Hon. S. James Otero |

Vincent J. Belusko (SBN 100282)
vbelusko@mofo.com
David L. Fehrman (SBN 87400)
dfehrman@mofo.com
Martin M. Noonen (SBN 169061)
mnoonen@mofo.com
Alex S. Yap (SBN 241400)
ayap@mofo.com
Jared W. Miller (SBN 287424)
jaredmiller@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

***Attorneys for Case No. 13-CV-6054 Defendant
Yamaha Corporation of America***

Donald L. Ridge, SBN 132171
dridge@mpplaw.com
MORRIS POLICH & PURDY LLP
1055 West Seventh Street
Twenty-Fourth Floor
Los Angeles, California 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178

George I. Lee (*pro hac vice*)
lee@mbhb.com
MCDONNELL BOEHNEN HULBERT
    & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois
Telephone: (312) 913-0001
Facsimile: (312) 913-0002

***Attorneys for Case No. 13-CV-6062 Defendant
Sonos Inc.***

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ............................................................................. 1

II.    BACKGROUND ............................................................................... 2

    A.    Plaintiff Black Hills Alleged That It "Owns" The Asserted Patents In Its Original Complaints ........................................................ 2

    B.    Plaintiff Filed First Amended Complaints In Delaware And Waited Until The Last Moment To Effect Service .................................. 3

    C.    When The Ownership Issue Was Raised In A Delaware Court Filing, Plaintiff Claimed It Was Being Disparaged ................................ 3

    D.    The Standing Issue Was Raised In Defendants' Pleadings Before And After The Cases Were Transferred From Delaware ....................... 5

    E.    Plaintiff's "Chain Of Title" Filings Have Now Confirmed That Plaintiff Did Not Own The Patents In Suit When It Filed Suit .............. 5

    F.    Defendants Tried To Persuade Plaintiff That These Cases Must Be Dismissed During A Thorough "Meet And Confer" Process ................ 6

III.   THESE CASES MUST BE DISMISSED FOR LACK OF STANDING ......... 8

    A.    Federal Circuit Precedent Requires Dismissal When A Plaintiff Did Not Own The Patent(s) In Suit On The Date It Filed Suit ............... 8

        1.    Plaintiff Did Not Have Standing At The Inception Of These Lawsuits, And Any Subsequent Assignment To Black Hills Cannot Cure The Debilitating Standing Defect .......................... 10

        2.    This Court Must Look At The Original Complaints To Assess Compliance With The Standing Requirement ................. 10

        3.    Owning An Entity That Owns A Patent Does Not Suffice To Confer Standing ....................................................... 11

    B.    Plaintiff's Authorities Are Inapposite To The Absolute Ownership Requirement In Patent Cases ...................................................... 12

IV.   CONCLUSION AND DISCUSSION OF PROPOSED ORDER .................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
    625 F.3d 1359 (Fed. Cir. 2010) ...................................................................*passim*

*Central Pines Land Co. v. United States,*
    697 F.3d 1360 (Fed. Cir. 2012) ...............................................................7, 12, 14

*ConnectU LLC v. Zuckerberg,*
    522 F.3d 82 (1st Cir. 2008) ...............................................................7, 8, 14, 15

*Enzo APA & Son, Inc. v. Geapag A.G.,*
    134 F.3d 1090 (Fed. Cir. 1998) .......................................................8, 9, 10, 16

*GAF Bldg. Materials Corp. v. Elk Corp.,*
    90 F.3d 479 (Fed. Cir. 1996) .....................................................................14, 15

*Keene Corp. v. United States,*
    508 U.S. 200, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993) ....................8, 11, 13

*Lans v. Digital Equip. Corp.,*
    252 F.3d 1320 (Fed. Cir. 2001) ..................................................................9, 11

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ..................................14

*Minneapolis & St. Louis R.R. v. Peoria & Perkin Union Ry. Co.,*
    270 U.S. 580, 46 S. Ct. 402, 70 L. Ed. 743 (1926) ........................................9, 13

*Paradise Creations, Inc. v. UV Sales, Inc.,*
    315 F.3d 1304 (Fed. Cir. 2003) ...........................................................................9

*Prasco, LLC v. Medicis Pharm. Corp.,*
    537 F.3d 1329 (Fed. Cir. 2008).............................................................7, 8, 14, 15

*Procter & Gamble Co. v. Paragon Trade Brands Inc.,*
    917 F. Supp. 305 (D. Del. 1995) .....................................................................10

*Rockwell Int'l Corp. v. United States,*
    549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007) ...........7, 12, 13, 14, 15

ii

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005) .................................................................... 9, 11

STATUTES

28 U.S.C. § 2201 ................................................................................................ 14

35 U.S.C. § 100(d) ................................................................................ 1, 8, 9, 13

35 U.S.C. § 281 .................................................................................... 1, 8, 9, 13

False Claims Act ................................................................................................ 13

OTHER AUTHORITIES

Fed. R. Civ. P. 4(m) ............................................................................................. 3

Fed. R. Civ. P. 12(b)(1) ........................................................................ 1, 16, 17

## I.    INTRODUCTION

This is a patent case.  Black letter patent law requires that a plaintiff own a patent *before* filing suit.  It is now uncontroverted that Plaintiff Black Hills Media LLC did <u>not</u> own the Patents in Suit when it filed the above-captioned lawsuits on May 22, 2012.  Accordingly, this Court lacks jurisdiction over these cases and is required to dismiss them under Fed. R. Civ. P. 12(b)(1).

This is a court of limited jurisdiction which only has subject matter jurisdiction over patent cases by virtue of statute.  Under the Patent Act (*see* 35 U.S.C. §§ 100(d) and 281), the rule has long been that a patentee must own the asserted patent(s) when a case is filed, and an ownership deficiency cannot be corrected after filing.  Whatever the stage of the litigation — *even after trial* — a case must be dismissed if the plaintiff did not own the patent(s) when it filed suit.  This issue cannot be waived and dismissal is not discretionary.

When this litigation was initially filed in Delaware, Plaintiff alleged that it "owns" each of the Patents in Suit.  As it turns out, that was not true.  Plaintiff did not secure ownership of the Patents in Suit until (at least) July 23, 2012, two months after filing suit.  Accordingly, this case is void *ab initio*.

Defendants have addressed this threshold issue as expeditiously as possible under the circumstances.  While Defendants suspected something might be amiss when the cases were still in Delaware, Plaintiff's former counsel claimed "disparage[ment]" when the ownership question was raised in a court filing.

The ownership issue only came to a head during the November 12, 2013 Scheduling Conference before this Court.  And Defendants were only able to confirm that Plaintiff did not own the Patents in Suit when the case was filed following Plaintiff's recent "chain of title" filings that were ordered by the Court during the Scheduling Conference.  Defendants then tried in vain to convince Plaintiff that the litigation must be dismissed, but Plaintiff refused to concede this undebatable legal point, requiring Defendants to bring this Rule 12(b)(1) motion.

1

## II.    BACKGROUND

### A.    Plaintiff Black Hills Alleged That It "Owns" The Asserted Patents In Its Original Complaints

On May 22, 2012, Plaintiff Black Hills Media, LLC (referenced herein as "Plaintiff" or "Black Hills") initiated the above-captioned lawsuits in Delaware against (1) Pioneer Corporation and Pioneer Electronics (USA) ("Pioneer"), (2) Yamaha Corporation of America ("Yamaha"), and (3) Sonos Inc. ("Sonos").[1]

In its original Complaints in the *Pioneer*, *Yamaha*, and *Sonos* cases, Plaintiff Black Hills claimed to <u>own</u> each of the asserted patents.  In the *Pioneer* and *Yamaha* cases, Plaintiff initially asserted three patents and made the following allegation in the May 22, 2012 Complaints in those two actions:

> Black Hills <u>owns</u> all of the rights and interests in United States Patent Nos. 8,045,952 (the "'952 Patent"); 8,050,652 (the "'652 Patent"); and 6,985,694 (the "'694 Patent") (collectively, the "Patents in Suit").

(*Pioneer* Dkt. No. 1 at ¶ 6; *Yamaha* Dkt. No. 1 at ¶ 6; emphasis added.)  Plaintiff asserted those same three patents and five others against Sonos, and made a similar claim of present ownership in its May 22, 2012 Complaint in that case:

> Black Hills <u>owns</u> all of the rights and interests in United States Patent Nos. 8,045,952 (the "'952 Patent"); 8,050,652 (the "'652 Patent"); 6,985,694 (the "'694 Patent"); 7,742,740 (the "'740 Patent"); 6,757,517 (the "'517 Patent"); 7,236,739 (the "'739 Patent"); 6,826,283 (the "'283 Patent"); and 8,028,323 (the "'323 Patent") (collectively, the "Patents in Suit").

(*Sonos* Dkt. No. 1 at ¶ 6; emphasis added.)   As it later turned out, Plaintiff's claims of ownership were untrue.

---

[1] Plaintiff filed a fourth Delaware lawsuit that same day against Logitech, Inc., which was dismissed on November 13, 2013 (*see Logitech* Dkt. No. 79).

2

### B.   Plaintiff Filed First Amended Complaints In Delaware And Waited Until The Last Moment To Effect Service

Plaintiff never served the original Complaints, but instead filed First Amended Complaints in the *Pioneer*, *Yamaha*, and *Sonos* cases on September 12, 2012, adding three more patents to each lawsuit.  In addition to the patents that were asserted in the original Complaints, the First Amended Complaints alleged infringement of U.S. Patent Nos. 6,108,686 (the "'686 Patent"), 8,230,099 (the "'099 Patent"), and 8,214,873 (the "'873 Patent").  Plaintiff again alleged that "Black Hills owns all of the rights and interests in" each asserted patent.  (*See Pioneer* Dkt. No. 3 at ¶ 6; *Yamaha* Dkt. No. 3 at ¶ 6; *Sonos* Dkt. No. 3 at ¶ 6.) This time, Plaintiff's ownership claim may have been legitimate, but as will be discussed, that was too late — standing cannot be corrected retroactively.

Plaintiff appeared to have been in no hurry to litigate, waiting until almost literally the last moment to serve.  In fact, Plaintiff served the Summons and First Amended Complaint on Yamaha on September 19, 2012 (*see Yamaha* Dkt. No. 6), which was exactly "120 days after the Complaint [was] filed" (which is the "Time Limit for Service" under Fed. R. Civ. P. 4(m)).

### C.   When The Ownership Issue Was Raised In A Delaware Court Filing, Plaintiff Claimed It Was Being Disparaged

When Plaintiff filed the original Complaints on May 22, 2012, there were no recorded assignments for the Patents in Suit evidencing ownership by Black Hills.  Then again, there is no requirement to record patent assignments with the U.S. Patent and Trademark Office ("PTO").  Thus, there was then no reason to question Plaintiff's original Complaint allegations that "Black Hills owns all of the rights and interests in" the Patents in Suit.

After Plaintiff filed and served the First Amended Complaints in September 2012, a check of the PTO Assignment Database revealed that Plaintiff had recorded assignment agreements in the interim.  While Defendants were then focused on challenging various pleading deficiencies (in Rule 12(b)(6) and 12(c)

3

motions filed with the Delaware court), and seeking to transfer the Delaware cases to the Central District of California (where each U.S. Defendant is physically located), the ownership issue was raised in a Delaware court filing, only to draw a claim of disparagement.

Specifically, on January 22, 2013, Defendant Yamaha stated as follows in its Opening Brief in support of its Motion to Transfer Venue:

> While Plaintiff Black Hills allegedly owns the six Patents in Suit (*see* D.I. 3 at ¶ 6), it is not the original assignee of any of them.  In fact, according to the results of "Patent Number" searches of the "Assignment Database" of the U.S. Patent and Trademark Office website (*see* http://assignments.uspto.gov/assignments/?db=pat).  "Black Hills Media, LLC" may not have acquired its purported ownership interests in the Patents in Suit until July 23, 2012 – on that date:
> - The '952 and '652 Patents were assigned to Plaintiff by Horsham Enterprises, LLC.
> - The '694 and '686 Patents were assigned to Plaintiff by Zamora Radio, LLC.
> - The '099 and '873 Patents were assigned to Plaintiff by Dryden Enterprises, LLC.
>
> (*See* Day Decl., ¶ 8 and Exh. B.)  These assignments appear to have been executed less than two months before the Patents in Suit were asserted against Yamaha in the September 12, 2012 Amended Complaint.  (*Id.*)  Curiously, the assignments of the '952, '652, and '694 Patents to Plaintiff do not appear to have been executed until *two months after Plaintiff asserted these patents in the May 22, 2012 original Complaint*, in which Plaintiff alleged that "Black Hills owns all of the rights and interests in" the '952, '652, and '694 Patents (*see* D.I. 1 at ¶ 6).

(*Yamaha* Dkt. No. 15 at 4.)  Rather than "own up" to the fact that there might be an issue, Plaintiff's former counsel accused Yamaha of ***disparaging*** Plaintiff:

> … Yamaha further raises issues concerning Black Hills' motives for bringing suit in Delaware and the ownership of some of the asserted patents.  Aside from an obvious attempt to ***disparage*** Black Hills, it is unclear what these observations add to the question before the Court, which is whether this case should be transferred to the Southern Division of the Central District of California.

(*Yamaha* Dkt. No. 20 at 1; emphasis added.)   Of course, the truth is not disparaging.

4

**D.     The Standing Issue Was Raised In Defendants' Pleadings Before And After The Cases Were Transferred From Delaware**

In addition to raising the ownership issue during briefing of its transfer motion (which was granted by the District of Delaware in an August 5, 2013 Order (*see* Yamaha Dkt. No. 31)), Yamaha asserted a "lack of standing" defense in its Answers to the First and Second Amended Complaints (*see Yamaha* Dkt. No. 29 at 10 and Dkt. No. 75 at 17), and Sonos did likewise in its Answer to the Second Amended Complaint (*see Sonos* Dkt. No. 70 at 18-19).   Of course, without discovery from Plaintiff on the ownership issue, Defendants were only able to plead lack of standing based on "information and belief."

**E.     Plaintiff's "Chain Of Title" Filings Have Now Confirmed That Plaintiff Did Not Own The Patents In Suit When It Filed Suit**

Defendants did not anticipate receiving discovery on the ownership issue until December 12, 2013 (the date the parties agreed to propose as the due date for Plaintiff's N.D. Cal. Patent Rule 3-1 and 3-2 disclosures).  Under N.D. Cal. Patent Rule 3-2(d), Plaintiff is required to produce "[a]ll documents evidencing ownership of the patent rights by the party asserting patent infringement." However, this issue came to a head at the November 12, 2013 Scheduling Conference before this Court.  As recounted in this Court's Minute Order:

> At the November 12 Scheduling Conference, the Court ordered Plaintiff to disclose documents evidencing its ownership of the Patents-in-Suit by November 15, 2013, pursuant to Rule 26(a).

(*Pioneer* Dkt. No. 103 at 2.)

On November 15, 2013, Plaintiff filed a "Notice of Black Hills' Chain of Title Regarding the Patents-in-Suit" (*Pioneer* Dkt. No. 100), which consisted of a chart purporting to show the "chain of title" for 11 out of the 12 Patents in Suit. In addition to omitting reference to the '686 Patent in the chart, Plaintiff's initial "chain of title" filing did not include any back-up documentation as noted by the Court in its subsequent Minute Order:

> [I]n this [initial] Notice of Chain of Title, Plaintiff only lists the past
> and present owners of the Patents-in-Suit.  Plaintiff does not appear
> to have provided documents or other evidence demonstrating the
> validity of the claimed transfers of ownership to Plaintiff.  Plaintiff
> must provide this evidence no later than November 25, 2013.

(*Pioneer* Dkt. No. 103 at 3.)

At the Court's behest, Plaintiff then filed "Black Hills' Amended Notice of Chain of Title Regarding the Patents-in-Suit" (*Pioneer* Dkt. No. 104) on November 25, 2013.  This Amended Notice attached numerous agreements, and the "chain of title" chart now referenced the previously-omitted '686 Patent.

The revised "chain of title" chart in the Amended Notice included another conspicuous change.  Whereas Plaintiff's initial chart was riddled with "**wholly owned by Black Hills**" parentheticals (*Pioneer* Dkt. No. 100; emphasis added) when referencing certain previous assignees for each Patent in Suit (with the exception of the omitted '686 Patent), the revised chart removed these parentheticals; as discussed below, this change appears to have been precipitated by Defendants raising this issue during the "meet and confer" process.

Whether or not the Amended Notice is now complete (noting that Plaintiff has indicated that additional ownership documentation may be produced on December 12, 2013), Plaintiff's "chain of title" filings at least confirm that Black Hills did <u>not</u> own any of the Patents in Suit when it filed suit on May 22, 2012.

### F. Defendants Tried To Persuade Plaintiff That These Cases Must Be Dismissed During A Thorough "Meet And Confer" Process

As detailed in the supporting Declaration of Martin M. Noonen, the parties met and conferred on multiple occasions before Defendants filed this motion:

1.   After Defendants reviewed and digested Plaintiff's initial "chain of title" Notice (which was filed at 3:47 p.m. Pacific time on Friday, November 15), Defendants contacted Plaintiff on the following Tuesday morning to request a

6

1      teleconference to discuss "Black Hill's chain of title pleading and whether subject

2      matter jurisdiction exists."  (*See* Noonen Decl., Exh. A.)

3           2.      During the initial "meet and confer" teleconference on Wednesday,

4      November 20, Plaintiff first informed Defendants that it had just received a call

5      from the Court instructing Plaintiff to supplement its "chain of title" filing by

6      November 25.  Plaintiff then cited a 2007 Supreme Court decision (*Rockwell*) that

7      it claimed to be controlling on the standing issue.  Defendants raised the omission

8      of the '686 Patent in the initial chart as well as the dubious "**wholly owned by**

9      **Black Hills**" parentheticals (which Plaintiff removed in its Amended Notice).

10           3.      On Friday, November 22, Defendants contacted Plaintiff to arrange a

11      second teleconference on November 26 to "discuss Black Hill's forthcoming

12      expanded chain of title pleading, and to further discuss whether subject matter

13      jurisdiction exists[.]"  (*See* Noonen Decl., Exh. A.)

14           4.      During the second "meet and confer" on Tuesday, November 26,

15      Defendants cited a Federal Circuit opinion (*Central Pines*) that distinguished

16      *Rockwell*, and explained that Federal Circuit precedent both before and after

17      *Rockwell* dictates that a plaintiff must own a patent at the inception of a lawsuit

18      for there to be subject matter jurisdiction (as demonstrated by way of example in

19      the Federal Circuit's 2010 opinion in *Abraxis*).   In view of the ensuing

20      Thanksgiving holiday, Plaintiff asked for an opportunity to review Defendants'

21      authorities, and the parties agreed to reconvene early the following week.

22           5.      During the third and final "meet and confer" teleconference on

23      Tuesday, December 3, Plaintiff cited a Federal Circuit decision in a declaratory

24      judgment case (*Prasco*) and a First Circuit decision in a copyright case

25      (*ConnectU*) as purported support for what Defendants believe to be the untenable

26      proposition that an ownership defect in a patent case can be corrected after filing.

27      The parties confirmed that they were at an impasse, and Defendants are filing this

28      motion after waiting the requisite seven days under C.D. Cal. Local Rule 7-3.

### III.  THESE CASES MUST BE DISMISSED FOR LACK OF STANDING

This motion presents a clear-cut legal issue.  The relevant facts are few and uncontroverted.  Plaintiff's "chain of title" filings now confirm that "Black Hills" (*i.e.*, Plaintiff) did not take ownership of any of the Patents in Suit any earlier than <u>July 23, 2012</u>, two months *after* Plaintiff filed its May 22, 2012 Complaints alleging that "Black Hills <u>owns</u> all of the rights and interests in" the Patents in Suit.

As set forth below, when a plaintiff files suit for patent infringement without owning the patent(s) in suit, the plaintiff does not have standing, the court does not have jurisdiction, and the case must be dismissed.  Defendants will first discuss the long-standing Federal Circuit jurisprudence that establishes this intractable rule, and will then distinguish the inapposite cases that Plaintiff has raised (*i.e.*, *Rockwell*, *Prasco*, *ConnectU*) in the face of this controlling precedent.

### A.  Federal Circuit Precedent Requires Dismissal When A Plaintiff Did Not Own The Patent(s) In Suit On The Date It Filed Suit

The requirement that a "patentee" own a patent before filing suit comes from the Patent Act:

> The Patent Act (the Act) provides that a "patentee" shall have remedy by civil action for patent infringement.  35 U.S.C. § 281 (1994).  The term "patentee" is defined in the Act under section 100(d) as including not only the patentee to whom the patent issued, but the successors in title to the patentee.

*Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998).

In *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010), the Federal Circuit summarized the ownership requirement in patent cases:

> **A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit.**  *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S. Ct. 2035, 124 L. Ed. 2d 118 (1993) (There is a

8

"longstanding principle that the 'jurisdiction of the Court depends upon the state of things at the time of the action brought.'") (internal citations omitted); *Minneapolis & St. Louis R.R. v. Peoria & Perkin Union Ry. Co.*, 270 U.S. 580, 586, 46 S. Ct. 402, 70 L. Ed. 743 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought."). **Based upon this Supreme Court jurisprudence, we have held that in a patent infringement action, "the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit" to assert standing.** *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-310 (Fed. Cir. 2003); *see also* 35 U.S.C. §§ 100(d), 281 (A "patentee" is entitled to bring a "civil action for infringement of his patent," and the patentee includes the "successors in title to the patentee."). **Thus, "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured" after the inception of the lawsuit.** *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (affirming dismissal of complaint and denial of motion to amend pleadings to substitute assignee as plaintiff when plaintiff-inventor assigned the patent prior to filing the action).

*Id.* at 1364 (emphasis added).

Thus, under Federal Circuit precedent, "[b]ased upon … Supreme Court jurisprudence," a patentee must own a patent when filing suit for infringement of such patent, and standing to file patent lawsuits cannot be conferred retroactively. *Id.*; *see also Enzo*, 134 F.3d at 1093 ("nunc pro tunc assignments are not sufficient to confer retroactive standing.").

In *Enzo*, the Federal Circuit explained the rationale for the ownership requirement in patent cases:

> As a general matter, parties should possess rights before seeking to have them vindicated in court.  Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue.

*Id.* at 1093-94 (quoting *Procter & Gamble Co. v. Paragon Trade Brands Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995)).  Here, Plaintiff did not possess rights in the Patents in Suit before seeking to have them vindicated in court.

### 1. Plaintiff Did Not Have Standing At The Inception Of These Lawsuits, And Any Subsequent Assignment To Black Hills Cannot Cure The Debilitating Standing Defect

The only salient facts on this motion are provided in Plaintiff's amended "chain of title" filing (*Pioneer* Dkt. No. 104).  There, for each Patent in Suit, Plaintiff has confirmed that the plaintiff in this action (*i.e.*, Black Hills Media, LLC) was not assigned any rights to any of the Patents in Suit until "7-23-2012" (*i.e.*, July 23, 2012).[2]  Because this is *after* the filing of the May 22, 2012 Complaints in the above-captioned lawsuits, dismissal is mandated.

### 2. This Court Must Look At The Original Complaints To Assess Compliance With The Standing Requirement

To the extent that Plaintiff contends that this Court should evaluate whether Plaintiff had standing when it subsequently filed its *amended* complaints, the Federal Circuit disposed of that argument in *Abraxis*:

---

[2] Defendants reserve all rights to challenge whether Black Hills was legitimately assigned ownership of the Patents in Suit on July 23, 2012.  For purposes of this motion, the only relevant (and incontrovertible) fact is that Black Hills did not have ownership before July 23, 2012.

1    While Abraxis filed an amended complaint on November 16, 2007,
2    we look to the date of the original Complaint, March 15, 2007,
3    because "the jurisdiction of the Court depends on the state of things
4    at the time of the action brought."

5    625 F.3d at 1366 n.3 (quoting *Keene*, 508 U.S. at 207). Under Federal Circuit
6    jurisprudence, "[t]he initial standing of the original plaintiff is assessed at the time
7    of the original complaint, even if the complaint is later amended." *Schreiber*
8    *Foods*, 402 F.3d at 1202 n.3.

### 3.    Owning An Entity That Owns A Patent Does Not Suffice To Confer Standing

Finally, while it appears that Plaintiff had second thoughts about arguing that the standing requirement could be satisfied if Black Hills *owned the entities that owned the Patents in Suit* when the lawsuits were filed on May 22, 2012 — reiterating that Plaintiff deleted the "**wholly owned by Black Hills**" parentheticals from its "chain of title" chart when filing its Amended Notice (*compare Pioneer* Dkt. Nos. 100 and 104) — that argument was also rejected by the Federal Circuit in *Abraxis*:

Common corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other. Without the transfer of legal title of the patents, Abraxis had no standing to bring this infringement action. *Lans*, 252 F.3d at 1328 (holding that a plaintiff-inventor, who assigned his patent to a corporation in which he was the sole shareholder and managing director prior to filing the action, lacked standing to sue).

625 F.3d at 1366. Notably, Plaintiff deleted these parentheticals after the initial "meet and confer" teleconference during which Defendants questioned Plaintiff about how Black Hills could "wholly own[]" various assignees (*see Pioneer* Dkt.

11

No. 100), many of whom purportedly took title to the Patents in Suit *well before* Black Hills was established on April 3, 2012.  (*See* Noonen Decl., Exh. B.)

In any event, ownership of prior assignees is immaterial to standing.  It was necessary for Black Hills to "own" *the Patents in Suit* when it filed suit, which it did not.

## B.     Plaintiff's Authorities Are Inapposite To The Absolute Ownership Requirement In Patent Cases

While Defendants will, of course, address Plaintiff's Opposition arguments in their Reply, Defendants are compelled to proactively distinguish the three decisions raised by Plaintiff during the "meet and confer" process.  As discussed below, Plaintiff's position is predicated on a sound bite from a 2007 Supreme Court decision that may seem facially appealing, but which actually applies to the "inverse" of the situation at bar.

As recounted above, Plaintiff cited *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007) during the parties' first "meet and confer" teleconference for the proposition that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."  549 U.S. at 473-74.

Initially, Plaintiff appears to have been grasping at straws in resorting to a *non*-patent case, as *Rockwell* was a *qui tam* case.  But more importantly, *Rockwell* is otherwise distinguishable:

> To the extent plaintiffs rely on the discussion in [*Rockwell*] to aid their argument, that case is distinguishable.  In that case, jurisdiction existed when the case was filed and the question was whether the amended complaint subsequently divested the court of jurisdiction; here, plaintiffs argue the inverse.

*Central Pines Land Co. v. United States*, 697 F.3d 1360, 1365 n.3 (Fed. Cir. 2012) (emphasis added).  As recognized by the Federal Circuit, *Rockwell* stands

for the limited proposition that a court may be *divested* of jurisdiction by subsequent events, which is indeed the "inverse" of the issue before this Court on this motion.

In *Rockwell*, the Supreme Court considered whether subject matter jurisdiction that was deemed to be established in the original *qui tam* complaint filed by a whistleblower against a government contractor under the False Claims Act was subsequently <u>eliminated</u> by either a joint "amended complaint" filed when the government intervened or the "final pretrial order that superseded all prior pleadings[.]" *See* 549 U.S. at 460, 474. In *Rockwell*, the issue before the Court was *not* whether plaintiff had standing when filing the original complaint.

Importantly, *Rockwell* was analyzing the particular <u>statute</u> under which the *qui tam* action was filed (*i.e.*, the False Claims Act),[3] and was <u>not</u> stating a general proposition that somehow applies to the specific requirement of patent ownership under the <u>Patent Act</u> (*e.g.*, 35 U.S.C. §§ 100(d) and 281), which has been established and reinforced by the Federal Circuit before and after *Rockwell*.

Notably, the above-discussed *Abraxis* opinion was issued by the Federal Circuit in 2010 — three years after *Rockwell* — yet *Abraxis* does not mention *Rockwell*; in fact, the Federal Circuit cited two *other* Supreme Court decisions as support for the above-quoted rule that "**[a] court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit.**" *Abraxis*, 625 F.3d at 1364 (citing *Keene*, 508 U.S. at 207 and *Minneapolis & St. Louis R.R.*, 270 U.S. at 586) (emphasis added). Plaintiff's *Rockwell* case is conspicuous by its absence

---

[3] "In our view, the term "allegations" is not limited to the allegations of the original complaint. It includes (at a minimum) the allegations in the original complaint *as amended*. <u>The statute speaks</u> not of the allegations in the "original complaint" (or even the allegations in the "complaint"), but of the relator's "allegations" *simpliciter*." *Rockwell*, 549 U.S. at 473 (italics in original; underlining added for emphasis).

13

in *Abraxis*, and was not cited there for the simple reason that it is distinguishable (as subsequently recognized by the Federal Circuit in *Central Pines*).

Unsurprisingly, Plaintiff's other authorities, which both stem from *Rockwell*, are also wholly distinguishable. In *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008), the Federal Circuit quoted the *Rockwell* sound bite in the context of a declaratory judgment action. *See id.* at 1337. Of course, in determining whether subject matter jurisdiction exists in an action for declaratory relief — *irrespective of whether the subject matter is patents or otherwise* — a court will analyze whether there is an "actual controversy" under the Declaratory Judgment Act (28 U.S.C. § 2201).[4]

The subject matter in *ConnectU LLC v. Zuckerberg*, 522 F.3d 82 (1st Cir. 2008) was copyright. In that case, the First Circuit was tasked with deciding whether an amended complaint that switched the basis of subject matter jurisdiction from "diversity of citizenship" to "federal question" had to be given effect. *See id.* In a non-patent decision that is in no way binding on this Court, the First Circuit permitted the plaintiff to "switch[] jurisdictional horses" (*id.* at 92) and cited *Rockwell* for support (*id.* at 91). *ConnectU* had nothing to do with patents or patent ownership.

At least *Prasco* dealt with patents, although in the *inverse* declaratory relief context. Notably, just before quoting the *Rockwell* sound bite and citing *ConnectU*, the Federal Circuit in *Prasco* quoted *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479 (Fed. Cir. 1996) for the proposition that "[l]ater events may

---

[4] In patent cases brought by an alleged infringer under the Declaratory Judgment Act, a court has subject matter jurisdiction only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007).

not create jurisdiction where none existed at the time of filing[.]" *Prasco*, 537 F.3d at 1337 (quoting *GAF*, 90 F.3d at 483).

In the present case, notwithstanding Plaintiff's untrue Complaint allegations that "Black Hills owns all of the rights and interests in" the Patents in Suit, jurisdiction did not exist at the time of filing.  Plaintiff is thus trying to "create jurisdiction where none existed at the time of filing" by relying upon the "later event" of Black Hills being (purportedly) assigned the Patents in Suit on July 23, 2012.

In *GAF*, "[i]t [was] undisputed that the '144 patent had not issued when the original complaint was filed"; according to the Federal Circuit, "[t]he subsequent issuance of the '144 patent did not cure this jurisdictional defect." *GAF*, 90 F.3d at 483.  In the present case, it is "undisputed" that the Patents in Suit were not assigned to Black Hills "when the original complaint was filed"; similar to *GAF*, the subsequent assignment of the Patents in Suit to Black Hills "did not cure this jurisdictional defect."

The present scenario does not present a case of a plaintiff "switching jurisdictional horses" as in *ConnectU*; here, Plaintiff's basis for subject matter jurisdiction in the original Complaint was purported ownership of the Patents in Suit, and that basis has not changed in the First or Second Amended Complaints. This case is also not a declaratory relief action like *Prasco*, where different considerations apply.  And it certainly isn't a *qui tam* action where the Court is considering whether subject matter jurisdiction has been divested by later events where it existed at the time of filing as in *Rockwell*, which is the "inverse" origin of all of Plaintiff's purported authorities.

Plaintiff's cases are inapposite to the absolute ownership requirement that has long been the rule in patent cases.  While dismissal of an action for lack of jurisdiction may seem somewhat draconian a year-and-a-half into a case, the Federal Circuit has dismissed cases for lack of standing at much more advanced

1   stages — even after trial. *See, e.g.*, *Abraxis*, 625 F.3d at 1368 (where the Federal

2   Circuit "reverse[d] the denial of the motion to dismiss the infringement complaint

3   for lack of standing, vacate[d] the district court's judgment, and remand[ed] with

4   instructions for the district court to dismiss Abraxis's complaint without

5   prejudice" after a seven-day bench trial and district court judgment in favor of

6   plaintiff). *Accord Enzo*, 134 F.3d at 1094.

7        As in *Abraxis* and *Enzo* and other cases where the purported "patentee" did

8   not own the asserted patent(s) when filing suit, dismissal is required here.

9   **IV.   CONCLUSION AND DISCUSSION OF PROPOSED ORDER**

10       Plaintiff Black Hills did not own the Patents in Suit when it filed the

11  Complaints in these lawsuits.  That fact is undisputed.  Accordingly, Plaintiff did

12  not have standing and these cases must be dismissed for lack of jurisdiction as a

13  matter of Federal Circuit law under Fed. R. Civ. P. 12(b)(1).

14       This motion is not intended to cast aspersions on Plaintiff's current counsel

15  who were not the attorneys who filed these lawsuits without first confirming that

16  Plaintiff "own[ed]" the Patents in Suit (as alleged in the Complaints).  Moreover,

17  giving Plaintiff's former counsel the benefit of the doubt, Defendants assume this

18  may have been a mistake.  However, under controlling precedent, an ownership

19  defect at the inception of a patent case is not a mistake that can be cured.

20       While Plaintiff's current counsel was not responsible for any initial mistake

21  here — and they were also not the attorneys who tried to "cure" the standing

22  defect before filing First Amended Complaints — they have perpetuated this issue

23  by filing Second Amended Complaints and then refusing to concede the legally

24  obvious point that these cases are void *ab initio* in view of Plaintiff's "chain of

25  title" filings.

26       Defendants have not only had to defend lawsuits that were improperly filed,

27  but because Plaintiff's current counsel has not acquiesced in the face of Federal

28  Circuit precedent, they have now incurred the cost of filing a motion that should

not have needed to be filed.  Whatever the motivation for Plaintiff's intransigence on the standing issue, dismissal is required and Defendants believe that they are entitled to attorneys' fees.

Of course, if these cases are dismissed and then re-filed here, it will be incumbent to revisit the case schedule, and a stay of at least the *Yamaha* and *Pioneer* cases in view of Yamaha's pending Petitions for Inter Partes Review ("IPRs") would seem to be in order for the reasons discussed at the November 12 Scheduling Conference (noting Pioneer's subsequent agreement to be bound by the final written decisions in the IPRs if the litigation is stayed pending inter partes review (*see Pioneer* Dkt. No. 99)).

Because Defendants will be greatly prejudiced if Plaintiff misuses its own procedural misstep to re-file in an inconvenient venue — especially given the expense incurred in transferring these cases to the present, appropriate venue — Defendants respectfully offer the proposed conditions set forth in the Proposed Order for the Court's consideration at its discretion, while respectfully reiterating that dismissal of these cases is <u>not</u> discretionary under Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

Dated:  December 11, 2013   QUINN EMANUEL URQUHART &
              SULLIVAN LLP


By: <u>*/s/ Harold A. Barza (with permission)*</u>
  Harold A. Barza
  Robert S. Hill
  Wayne Taichi Alexander

  ***Attorneys for Defendants***
  ***Pioneer Corporation and***
  ***Pioneer Electronics (USA) Inc.***

17

1    Dated:  December 11, 2013          MORRISON & FOERSTER LLP

2

3                                       By: /s/ Martin M. Noonen
                                            Vincent J. Belusko
4                                           David L. Fehrman
                                            Martin M. Noonen
5                                           Alex S. Yap
                                            Jared W. Miller
6

7                                           **Attorneys for Defendant**
                                            **Yamaha Corporation of America**
8

9    Dated:  December 11, 2013          MCDONNELL BOEHNEN HULBERT
                                            & BERGHOFF LLP MORRIS
10                                          *and*
11                                      POLICH & PURDY LLP

12

13                                      By: /s/ George I. Lee (with permission)
                                            George I. Lee
14                                          Donald L. Ridge

15                                          **Attorneys for Defendant**
                                            **Sonos Inc.**
16

17

18

19

20

21

22

23

24

25

26

27

28